No. 23,549.

THE STATE OF KANSAS, ex rel. RICHARD J. HOPKINS, as Attorney-general, et al., *Plaintiff*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., *Defendants*.

### SYLLABUS BY THE COURT.

MANDAMUS—*Changing Railroad Freight Rates—Application Should First Be Made to Utilities Commission—Adequate Remedy at Law.* It is the public policy of this state, established by the legislature, that any controversy which falls within the scope of the jurisdiction of the public utilities commission shall be adjusted there, subject to such

review by the courts as the law prescribes, and the civil code providing that the writ of mandamus may not issue in any case where there is a plain and adequate remedy in the ordinary course of law, must be interpreted accordingly. (*Telephone Association v. Telephone Co.*, 107 Kan. 169, 190 Pac. 747, followed.)

Original proceeding in mandamus. Opinion filed April 15, 1921. Peremptory writ denied and action dismissed.

*Richard J. Hopkins*, attorney-general, *A. E. Helm*, and *William A. Smith*, both of Topeka, for the plaintiff.

*William R. Smith, Owen J. Wood, Alfred A. Scott, R. W. Blair, Luther Burns*, all of Topeka, *W. P. Waggener, W. W. Brown*, both of Atchison, *R. R. Vermillion, W. F. Lilleston*, both of Wichita, *Samuel W. Sawyer*, of Kansas City, Mo., *James L. Coleman*, of Chicago, Ill., and *Byron Clark*, of Omaha, Neb., for the defendants.

The opinion of the court was delivered by

MARSHALL, J.: After filing the opinion in this action on April 11, 1921, the plaintiff asked that the matter be heard on the allegations in the petition charging discrimination in the rates on stock and feeder cattle. This would amount to mandamus to compel the defendants to cease charging shippers of stock and feeder cattle within this state the discriminatory rates alleged in the petition without first submitting the matter to the public utilities commission.

This matter is disposed of by *Telephone Association v. Telephone Co.*, 107 Kan. 169, 190 Pac. 747, in the following language:

"The plaintiff argues that it is entitled to relief by writ of mandamus granted by this court, independently of the action of the court of industrial relations. The purpose of the writ of mandamus is to compel performance of a clear legal duty. It is said the defendants rest under the clear legal duty not to discriminate against the plaintiff by excluding its telephone system from physical connection with their telephone systems, because of certain provisions of the public utilities act. Without expressing an opinion on the subject, it will be assumed, for the purpose of a decision, that this claim is correct. Nevertheless, an original action of mandamus is not the proper remedy.

"The writ of mandamus may not be issued in any case where there is a plain and adequate remedy in the ordinary course of law (Gen. Stat. 1915, § 7647). This statute is merely declaratory of the common law. The plaintiff has a plain and adequate remedy by application to the court

of industrial relations, as the legal successor to the public utilities commission. It is said, however, that such remedy is out of the ordinary course of law, and the case of *Larabee v. Railway Co.*, 74 Kan. 808, 88 Pac. 72, is cited. That case was decided many years ago, when public utilities regulation in this state was confined to railroads. A tribunal with the jurisdiction and powers of the court of industrial relations was beyond the range of legislative vision, and all remedies were regarded as unusual and out of the ordinary course which did not follow closely the ancient paths of law and equity. The case was one to compel resumption of a definite service under established conditions—switching cars from a mill—which had simply been discontinued. The court had nothing to do but to command restoration of the service. The case fell naturally within the ordinary jurisdiction of the courts in mandamus, and the court took jurisdiction at once. It is now clearly perceived that what is most needed in the field of business intercourse is expert administrative adjustment, and not court adjudication. Advancing step by step according to that principle, the legislature superseded the board of railroad commissioners with the public utilities commission, gave it authority to regulate public utilities generally, and then superseded the public utilities commission with the court of industrial relations, and gave it greatly amplified powers. The policy has become the settled policy of the state. It contemplates that any controversy which naturally falls within the scope of the jurisdiction of the court of industrial relations shall be adjusted there, subject to such review by the courts as the statute provides, and the mandamus statute must be interpreted accordingly. The present controversy is peculiarly one of the kind just referred to." (p. 173.)

The state relies on the principle followed in *Larabee v. Railway Co.*, 74 Kan. 808, 88 Pac. 72, but the facts in that case are different from those in the present case. Here the state is asking that the defendants be compelled to remove a discrimination, the existence of which is denied, in the rates for the shipment of stock and feeder cattle. In the Larabee case the plaintiff asked the court to compel the defendant to resume a specific service which had been suspended, a service which the defendant was under the law compelled to perform, and a service for the suspension of which there was no excuse, nor any way to avoid its resumption. That case was disposed of after answer, after the appointment of a commissioner to take the evidence, after the evidence had been taken and the commissioner had reported thereon, and a final conclusion was not reached until after the lapse of years.

When *Larabee v. Railway Co.* was decided, the law that has developed into the present public utilities law was new, and its validity was being hotly contested. The extent of the powers

that could be given to regulating bodies had not been settled by the courts. Shortly previous an act establishing what was known as the court of visitation had been held unconstitutional (*The State v. Johnson*, 61 Kan. 803, 60 Pac. 1068), and not until after the Larabee case was decided was the law creating the board of railroad commissioners held valid (*The State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606). While the service sought to be compelled in the Larabee case was simple and required no expert evidence or information to enable the court to reach a conclusion, yet if that case were presented to this court at the present time, probably the court would say to the applicant, the law has given you a remedy before the public utilities commission and you must go to that commission before resorting to the courts.

The plaintiff desires an immediate determination of this entire controversy for the reason that delay will make any judgment that may be rendered in its favor of no effect. The defendant denies "both as a matter of fact and as a matter of law" that the present rates are discriminatory against Kansas shippers. This presents questions of fact which must be determined on evidence, a part of which is of necessity expert, and concerning which the court, if it reaches a right conclusion, must have the aid of experts. This will compel such a delay as will carry the final judgment beyond the time that will benefit shippers of stock and feeder cattle in this state.

A peremptory writ of mandamus is denied, and the action is dismissed.